UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AUTO-OWNERS INSURANCE COMPANY,

       Plaintiff,

-vs-                                                         Case No. 6:08-cv-1454-Orl-19DAB

ACE ELECTRICAL SERVICE, INC.,
CHARLES R. DEPARI, JR., DONNA
M. DEPARI, STEVEN L. KIRSCHT,

       Defendants.
_____

ACE ELECTRICAL SERVICE, INC.

       Third Party Plaintiff,

-vs-

CITY OF DAYTONA BEACH,

       Third Party Defendant.
_____

CITY OF DAYTONA BEACH,

       Fourth Party Plaintiff,

-vs-

DICKENS AND ASSOCIATES, INC.,

       Fourth Party Defendant.
_____

# ORDER

This case comes before the Court on the following:

1. Unopposed Motion for Leave to File Third Party Complaint Against Dickens & Associates, Inc. by City of Daytona Beach (Doc. No. 56, filed June 5, 2009);

2. Order Granting the Unopposed Motion for Leave to File Third Party Complaint Against Dickens & Associates, Inc. (Doc. No. 57, filed June 5, 2009);

3. Third Party Complaint Against Dickens and Associates, Inc. by City of Daytona Beach (Doc. No. 59, filed June 24, 2009);

4. Motion to Dismiss Third Party Complaint by Dickens and Associates, Inc. (Doc. No. 62, filed July 20, 2009);

5. Response of the City of Daytona Beach to Motion to Dismiss Third Party Complaint (Doc. No. 64, filed July 29, 2009);

6. Motion for Leave to File Fourth Party Complaint Against Stephen P. Byrne, PE by City of Daytona Beach (Doc. No. 65, filed July 30, 2009);[1] and

7. Response of Dickens and Associates, Inc. in Opposition to Motion for Leave to File Fourth Party Complaint Against Stephen P. Byrne, PE (Doc. No. 66, filed Aug. 12, 2009).

## Background

The dispute underlying this case concerns a surety bond provided by Auto-Owners Insurance Company ("AOIC") on behalf of a contractor, Ace Electrical Service, Inc. ("Ace"). Ace contracted with the City of Daytona Beach to work on a project at the Halifax Harbor Marina that involved,

---

[1] The Court will use the term "third-party complaint" because it better tracks the language of Federal Rule of Civil Procedure 14.

among other things, the installation of electrical wiring. (Doc. No. 18 ¶¶ 9-12, filed Oct. 10, 2008.) At some point, Ace advised the City that it could not finish the work because it believed that the electrical wiring, as specified in the design plan, violated applicable building codes. (*Id.* ¶ 12.) As a result, Ace told the City that it would need an additional $30,810.00 to complete the project with the proper wiring. (*Id.* ¶ 13.) The City disagreed and instructed Ace to either finish the project as planned or absorb the additional costs. (*Id.* ¶¶ 14-15.) After Ace refused, the City declared Ace in default and stated its intent to collect the surety bond. (*Id.* ¶ 17.) AOIC then sued Ace for damages arising from the loss of the bond; Ace impled the City under Federal Rule of Civil Procedure 14 for breach of contract and indemnification; the City impled the project designer, Dickens and Associates, Inc. ("Dickens") under the same Rule, asserting claims for indemnification and malpractice; and now the City wishes to implead a Dickens employee, Stephen P. Byrne, as an additional defendant. The Motions before the Court present two sets of issues: (1) whether the City's Third-Party Complaint against Dickens is procedurally proper and, as a related matter, whether the Court should grant the City leave to file an additional third-party complaint against Byrne; and (2) whether the Third-Party Complaint against Dickens states claims upon which relief can be granted.

This litigation began on August 22, 2008, when AOIC filed the initial Complaint against Ace, Charles R. DePari, Jr., Donna M. DePari, and Steve L. Kirscht. (Doc. No. 1.) The City was joined as a third-party defendant on October 10, 2008. (Doc. No. 18.) The Court entered the Case Management and Scheduling Order on October 24, 2008, setting December 22, 2008, as the deadline for amended pleadings and the addition of new parties. (Doc. No. 21.) The City did not request an extension of this deadline.

About five-and-a-half months after the deadline, on June 5, 2009, the City moved for leave to file its own third-party complaint against Dickens, and on July 30, 2009, the City moved for leave to file an additional third-party complaint against Stephen P. Byrne. (Doc. Nos. 56, 65.) The Court granted the first Motion as unopposed, (Doc. No. 57); however, once Dickens was joined in the action, it filed a Motion seeking dismissal of the Third-Party Complaint against it and objected to the City's request for leave to file a third-party complaint against Byrne, (Doc. Nos. 62, 66).

The City's claims against Dickens are premised on Dickens' alleged negligence in designing the plans for the Halifax Harbor Marina project. (Doc. No. 59 ¶¶ 22-35.) The City contends that Dickens, as the plan designer, must indemnify it for any liability the City has to Ace. This duty of indemnification, according to the City's Third-Party Complaint, arises from both the common law and an indemnification provision in the contract between the City and Dickens. (*Id.* ¶¶ 22-32.) In addition, the City claims that Dickens is liable for malpractice. (*Id.* ¶ 33-35.)

Dickens argues that the City's Third-Party Complaint is untimely filed. (Doc. No. 62.) Although the Court granted leave to file the Complaint at a time when Dickens was not a party to this action, Dickens argues that no party at the time had a motive to object. (*Id.* at 13.) Because the Complaint was filed after the relevant deadline expired, Dickens contends that the City was required to demonstrate "good cause" under Federal Rule of Civil Procedure 16(b) before obtaining leave to file a third-party complaint under Rule 14(a). (*Id.*) Dickens notes that a showing of good cause requires a demonstration of diligence, and it argues that the City's Motion for leave to file the third-party complaint against Dickens lacked any such showing. (*Id.* at 14.) Dickens asserts that to the extent the City seeks indemnification from Dickens, the City knew of the claim in October of 2008, when the City was joined as a defendant, and to the extent the City seeks recovery on malpractice

grounds, it knew of the cause of action in July of 2007, when AOIC's consulting firm determined that the Halifax Harbor design could not be constructed. (*Id.* at 14-15.) Thus, Dickens argues, the request to file the third-party complaint is inexcusably late, and the Court should reconsider its earlier Order. (*Id.*) On the same rationale, Dickens argues that Court should deny the City's request to file a third-party complaint against Byrne. (Doc. No. 66 at 7-9.)

The City responds that it "did not agree to the dates set forth in the Case Management Report" that formed the basis for the Court's selection of the December 22, 2008, deadline. (Doc. No. 64 at 6.) Further, the City states that it "sought leave to file a third-party complaint to add [Dickens] after it was discovered that to the extent that the design of the Project is not legal or properly construct[i]ble, that Dickens and/or Stephen Byrne was the active wrongdoer." (*Id.*)

Regarding the substance of the City's claims against it, Dickens argues that the indemnification claim fails under Florida law because the City's liability is direct rather than vicarious. (Doc. No. 62 at 6-8.) Further, Dickens contends that the contract's indemnification agreement is invalid under Florida law because it could require Dickens to indemnify the City in cases where the City was at fault. (*Id.* at 8-11.) Finally, Dickens argues that the economic loss rule bars recovery against Dickens for malpractice. (*Id.* at 11-13.) The City responds that the indemnification claim is permissible because it is based on the City's role as a passive participant, the partial invalidity of the indemnification agreement does not void the entire agreement, and the malpractice claim against Dickens is permissible despite the economic loss rule. (*Id.* at 2-6.)

**Standard of Review**

**I.       Amendment of Pleadings After the Applicable Deadline**

When a party asks to amend a pleading after the applicable scheduling order deadline has passed, or in this case requests leave to file a third-party complaint, the party is in effect seeking to modify the scheduling order deadlines. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *Gallien v. Binkley*, No. CV 408-037, 2008 WL 4916394, at *2 (S.D. Ga. Nov. 14, 2008); *McSherry v. Capital One FSB*, 236 F.R.D. 516, 519 (W.D. Wash. 2006). Here, the Case Management and Scheduling Order set a deadline of December 22, 2008, for amended pleadings, (Doc. No. 21 at 1), and the City sought leave to file third-party complaints on June 5 and July 30, 2009. Therefore, the applicable standard is found in Federal Rules of Civil Procedure 6 and 16 for the modification of deadlines. *Sosa*, 133 F.3d at 1419.

Federal Rule of Civil Procedure 6 requires a showing of "excusable neglect" for an extension of a passed deadline. Fed. R. Civ. P. 6(b)(1)(B). Rule 16 concerns scheduling orders specifically and provides: "A [scheduling order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a party files a motion for leave to amend a pleading after the relevant scheduling order deadline has passed, the party must demonstrate both good cause and excusable neglect for the belated request. Fed. R. Civ. P. 6(b)(1)(B), 16(b)(4); *Sosa*, 133 F.3d at 1418-19 & n. 2 (explaining that Rule 16's good cause standard provides the "proper guide" for determining whether to modify a scheduling order; implying that Rule 16 provides a more stringent standard than Rule 6's excusable neglect standard). An untimely motion to amend a pleading is distinctly disfavored under the Local Rules of this District. *See* Local Rule 3.05(c)(2)(E).

The key to establishing good cause for an untimely amendment under the Eleventh Circuit's case law is to demonstrate diligence. *Sosa*, 133 F.3d at 1419. To this end, the Eleventh Circuit has found three factors to consider when evaluating the diligence of a plaintiff seeking to amend a pleading: "(1) [whether] the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) [whether] the information supporting the proposed amendment was available to the plaintiff; and (3) even after acquiring information, [whether] the plaintiff delayed in asking for amendment." *Pioneer Int'l (USA), Inc. v. Reid*, No. 2:07-cv-84-FtM-34DNF, 2007 WL 4365637, at *2 (M.D. Fla. Dec. 12, 2007) (citing *Lord v. Fairway Electric Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002); *Sosa*, 133 F.3d at 1418-19).

## II.     Failure to State a Claim

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127 S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I.    Whether the Third-Party Complaints are Procedurally Proper**

    **A.    Third Party Complaint Against Dickens**

The Court previously granted leave to file a third-party complaint against Dickens based on the consent of the parties that were participating in the litigation at that time. (*See* Doc. No. 57 (granting an unopposed motion).) Although the City has failed to show diligence in bringing its claims against Dickens, the Court finds that this lack of diligence does not warrant reconsideration of the Order granting the City leave to file a third-party complaint against Dickens.

As an initial matter, the Court questions whether a party must demonstrate good cause where the other parties to the litigation stipulate to the request to join additional parties. Perhaps the most prominent reason for the good cause standard is to avoid prejudice to the litigants who are already participating in the action and are bound by the case management and scheduling order. When all such litigants consent to the addition of another party, prejudice is not a concern. Requiring the moving party in such cases to justify the request to amend would be wasteful.

Of course, the newly joined party may feel prejudiced, and Dickens is correct that such a party may have a legitimate desire to avoid participating in an already complex case. However, the Federal Rules of Civil Procedure suggest that objecting to past violations of the case management and scheduling order deadlines is not the proper vehicle for relief. Rather, the Rules provide two other distinct remedies: the newly joined party can seek severance of the claim against it under Federal Rule of Civil Procedure 21, *see Tillis v. Cameron*, No. 1:07-cv-0078-WKW, 2007 WL 2806770, at *5 (M.D. Ala. Sept. 25, 2007) ("The determination of whether to grant a motion to sever is left to the discretion of the trial court." (internal quotation marks and citation omitted)), or a separate trial under Rule 42.[2] Dickens has not sought relief under either of these Rules.

Finally, even if the Court were required to make a finding of good cause, the standard was met. Certainly, the City's Motion and Response fail to demonstrate the level of diligence specified in the Eleventh Circuit's case law concerning Rule 16(b). To begin, the City's inability to participate in drafting the Case Management Report is irrelevant. The City filed its Answer on November 5, 2008, (Doc. No. 22), and could have moved, at any time before December 22, 2008,

---

[2] The Court expresses no opinion as to whether such a request would be granted in this case. However, the inclusion of all parties to this dispute furthers a number of important policy interests, including the preservation of judicial resources and the encouragement of settlement.

for an extension of the deadline to amend pleadings and join new parties. It never did so. Instead, the City filed two untimely requests to join additional parties, one five-and-a-half months late, and the other seven months late. The failure to move for an extension of time before the deadline demonstrates a lack of diligence. *See Sosa*, 133 F.3d at 1418-19.

Likewise, the City's contention that it first discovered potential claims against Byrne during the past two months, even if true, demonstrates a lack of diligence.[3] The possibility of an indemnification claim against Byrne should have been obvious once the City was joined as a third-party defendant. Indemnification claims implicate the following test:

> Foremost, the party who seeks indemnity must be wholly without fault and the party against whom indemnity is sought must be guilty of negligence. Secondly, the party who seeks indemnity is obligated to pay only because of some vicarious, constructive, derivative or technical liability to another.

*Paul N. Howard Co. v. Affholder, Inc.*, 701 So. 2d 402, 403-04 (Fla. 5th DCA 1997) (citing *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490 (Fla. 1979)). To the extent the cause of action requires negligence on Dickens' behalf, the City should have known about the alleged defects in its work when AOIC's consulting firm, Marine Specialities, LTD, informed the City in July of 2007 that the Halifax Harbor design could not be constructed. (*See* Doc. No. 59 ¶ 18 ("On or about July 9, 2007, Marine Specialities issued its Evaluation of Construct[i]bility stating the Project is 'not construct[i]ble as drawn.'").) For the same reason, the City should have known about a potential malpractice claim against Dickens once it received the report. In sum, the City offers no factual

---

[3] The City does not elaborate on the specific facts or circumstances that led to the discovery of these claims. Dickens surmises that the timing of the City's Third Party Complaint was prompted by a failed mediation with the other parties in this action in May. (Doc. No. 64 at 2.)

support for its contention that it acted diligently, and no support exists on the face of the record. *Sosa*, 133 F.3d at 1418-19.

Despite these shortcomings, however, the addition of Dickens to this litigation is appropriate for other reasons. The Eleventh Circuit's case law defines the good cause standard as requiring diligence, *see Sosa*, 133 F.3d at 1418, but it has never foreclosed the possibility that good cause can be demonstrated by facts external to the parties' conduct. In other words, even when the party seeking to file a third-party complaint has failed to demonstrate diligence under *Sosa*, the term "good cause" is broad enough to permit the Court to grant the request for other reasons.

In this particular case, expediency is best served by joining Dickens. First, the underlying dispute involves a failed construction project for a plan that Dickens designed. The City has sued Dickens for malpractice and indemnity. The resolution of the underlying claims against Ace and the City may also resolve the claims against Dickens. Second, to the extent the Court will need to address the claims against Dickens, it may have the advantage of analyzing these claims after gaining familiarity with the factual issues. Finally, construction litigation presents a potential web of liability between the many participants in a given project. In this case, a surety issuer is suing a contractor, the contractor counterclaimed and is suing a municipality, and the municipality wishes to sue both a design firm and its employee. Bringing these parties together in one case enhances the possibility of settlement and avoids burdening judicial resources. Refusing to allow the amendments sought by the City may result in multiple lawsuits, possibly filed in separate courts, involving the same set of facts, issues, and players. It also avoids the potential for inconsistent results stemming from separate lawsuits.

Accordingly, good cause existed to amend the Case Management and Scheduling Order, and the Court declines to reconsider its earlier Order.

### B. Third Party Complaint Against Byrne

For the reasons stated above with respect to Dickens, the Court finds that good cause exists to amend the Case Management and Scheduling Order to permit the addition of Byrne to this case.[4]

## II. Failure to State a Claim

In addition to the procedural arguments, Dickens contends that the City fails to state claims against it upon which relief can be granted.

### A. Common Law Indemnification

Dickens first argues that the common law indemnification claim fails because the City cannot demonstrate that it is obligated to pay only because of some vicarious, constructive, derivative or technical liability to another. (Doc. No. 62 at 6.) According to Dickens, "Ace's breach of contract and declaratory relief claims against the City are not predicated on any alleged negligence on the part of Dickens; rather, they are based on the City's alleged breach of the affirmative duties it owed to Ace by virtue of the contractual relationship between Ace and the City." (*Id.*) Thus, Dickens argues that the City's liability is direct. *Id.* The City responds that it is a "passive participant" who is liable only because of Dickens' negligence with respect to the design plans. (Doc. No. 64 at 2-3.)

As explained above, indemnification claims must satisfy two related requirements. First, "the party who seeks indemnity must be wholly without fault and the party against whom indemnity

---

[4] In a footnote, Dickens suggests that the City's malpractice claim may be inappropriate to assert in a third party complaint under Federal Rule of Civil Procedure 14(a). (Doc. No. 66 at 10 n.8.) However, Dickens then states that the issue "is more appropriately addressed via a motion to dismiss in the event Court grants the City leave to file its Fourth Party Complaint against Mr. Byrne." (*Id.*) Accordingly, the Court will not address the issue in this Order.

is sought must be guilty of negligence." *Paul N. Howard Co.*, 701 So. 2d at 403-04. Second, "the party who seeks indemnity is obligated to pay only because of some vicarious, constructive, derivative or technical liability to another." *Id.*

In this case, the City's potential contract liability to Ace does not mean that its liability is "direct" such that an indemnification claim is impermissible. To the extent Dickens is arguing that contract liability to one party can never form the basis of an indemnification claim against a third party, the argument is unpersuasive. Of the terms "vicarious," "constructive," "derivative" and "technical" liability, only "vicarious liability" is a recognized term of art, and it is typically used to describe liability imposed by agency law. The Florida Supreme Court's analysis in *Houdaille* strongly suggests that the other three terms, "constructive," "derivative," and "technical," are meant merely to capture the concept that the party seeking indemnity must be without fault. For instance, the Court remarked, "[indemnification] shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Houdaille*, 374 So. 2d at 493. In addition, while addressing the lower courts' confusing uses of different terminology, the Court explained "[r]egardless of what specific terms are employed[,] whether the courts say active-passive or primary-secondary[,] what they are really speaking of is fault or no fault." *Id.*

As these passages demonstrate, the common theme throughout the opinion is the need for the party seeking indemnity to be faultless, and the Florida Supreme Court has given no indication that a party's liability for breach of contract precludes a finding of faultlessness. In fact, the common usage of indemnification against manufacturers in products liability cases where a customer

sues a retailer for breach of implied warranty, a type of contract claim, suggests that a party may be indemnified for liability arising from a breach of contract. *E.g.*, *Time Ins. Co. v. Neumann*, 634 So. 2d 726, 729 (Fla. 4th DCA 1994) (citing *Pender v. Skillcraft Indus., Inc.*, 358 So.2d 45, 47 (Fla. 4th DCA 1978)).

Turning to the specific claims against the City, Ace contends that the City breached the contract in at least twelve different ways:

> a. failing to provide a sufficient, constructible, and/or legal design for the Project;
> b. refusing to issue a change order for the Electrical Wire Change;
> c. demanding that Ace complete the Project in an illegal manner;
> d. demanding that Ace pay the entire costs of any Electrical Wire Change;
> e. attempting to waive or ignore the applicable electric code requirements;
> f. demanding that Ace complete the Project in a manner that was expressly contradictory to the Contract;
> g. demanding that Ace complete the Project in a manner that would be unlawful and dangerous to the public or other third parties;
> h. giving AOIC notice of a contractor default and ultimately making a claim under the Bonds, both done in bad faith;
> i. causing significant and unnecessary expenditures to be incurred by AOIC;
> j. unlawfully terminating Ace without providing Ace a reasonable opportunity to perform the Contract in a legal manner;
> k. withholding sums due to Ace under the Contract;
> l. and acting in ways that violate the City's covenant or obligation of good faith and fair dealing.

(Doc. No. 18 ¶ 26.) There are several scenarios in which Ace could successfully sue the City for at least some of these alleged breaches, yet the City would nevertheless be faultless in the ordinary sense of the word. For example, the City's alleged failure to provide a constructible design would not be the City's fault if Dickens negligently provided the City with a design that could not be constructed. Likewise, if the City simply relied on Dickens' plans, the City might be found to be faultless for refusing to allow Ace to change the project's wiring. Thus, the City may maintain an

indemnity claim against Dickens to the extent the City is found to be without fault for the conduct which forms the basis of the indemnity claim.

B.     **Contractual Indemnity**

Dickens next argues that the contractual indemnity provision between it and the City is void under Florida law. Specifically, section 725.08 of the Florida Statutes prevents a public agency from requiring a design professional to indemnify the agency in instances where the design professional is without fault. A design professional may be held liable only for the negligence of itself or its employees. Fla. Stat. § 725.08(1)-(2) (2008). The indemnification provision in the contract between Dickens and the City, read broadly, could require Dickens to indemnify the City in situations where Dickens and the City share fault. (*See* Doc. No. 59 at 12 (appearing to require indemnification where the liability arises "in part" due to Dickens' misconduct).)

The City concedes this point, acknowledging that it cannot recover from Dickens unless Dickens is found to be negligent and the City is not. But, as the City points out, there is no indication in the contract or the statute that the entire indemnification provision is doomed because one interpretation of the provision could subject Dickens to liability in a manner prohibited by statute.[5] Nor does Dickens explain why this would be the case. Accordingly, the clause is otherwise valid, and the City may maintain an action for contractual indemnity to the extent the action is consistent with section 725.08 of the Florida Statutes.

---

[5] The Florida Supreme Court has observed that "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Local No. 234 v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953). Limiting the indemnification clause to instances where Dickens, and not the City, was the party at fault does not appear to affect the validity of the contract as a whole.

### C. Malpractice

Dickens finally argues that the malpractice claim against it fails under the economic loss rule. According to the Florida Supreme Court, "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Economic losses are "disappointed economic expectations," or more broadly "the loss of the benefit of the bargain." *Id.* at n.1. The rule applies in two different circumstances: (1) "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," and (2) "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Id.* at 536. The rule does not apply to an individual professional who is not party to the contract. *Moransais v. Heathman*, 744 So. 2d 973, 976 (Fla. 1999).

The purpose of the contractual privity economic loss rule is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."[6] *Indemnity Ins. Co. of N. Am.*, 891 So. 2d at 546. Accordingly, "courts have

---

[6] The Florida Supreme Court further explained:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.

(continued...)

held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537. A tort action is not barred, however, when the tort is "committed independently of the contract breach." *Id.* If a tort requires proof of facts "separate and distinct from the breach of contract," then the tort is independent. *Id.* (quoting *HTP, Ltd. v. Lineas Aereas Constarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)).

Dickens contends that it, as a firm in contractual privity with the City, cannot be sued in tort for a defect in its work that is the subject of the contract and which did not cause personal injury or damage to other property. (Doc. No. 62 at 11.) The City's response to this argument is difficult to understand. The City argues that *Moransais* permits an "action against a professional engineering firm who performed an inspection of a home, despite the existence of a contract between the parties," (Doc. No. 64 at 4-5), but *Moransais* concerned only the individual liability of the firm's employee. *Moransais*, 744 So. 2d at 977 ("The question remains, however, under the Second District's analysis, as to whether Florida recognizes a cause of action based on professional negligence against an individual professional who did not personally contract with the aggrieved party, but who is an employee of the professional services corporation that did contract with the aggrieved party."). The City then cites several decisions in which professional corporations have been sued for malpractice. (Doc. No. 64 at 5 (citing *Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condo. Ass'n., Inc.*, 581 So. 2d 1301 (Fla. 1991); *Cristich v. Allen Eng'g, Inc.*, 458 So. 2d 76 (Fla. 5th DCA 1984); *First Fla. Bank, N.A. v. Max Mitchel & Co.*, 558 So. 2d 9 (Fla. 1990)). None of these cases addresses the economic loss rule. *Baskerville-Donovan Eng'rs, Inc.*,

---

[6](...continued)
     *Indemnity Ins. Co. of N. Am.*, 891 So. 2d at 536-37.

581 So. 2d at 1302 (addressing issues with the statute of limitations for malpractice); *Cristich*, 458 So. 2d at 79 (same); *First Fla. Bank, N.A.*, 558 So. 2d at 10 (determining an accountant's professional liability to third parties).

To the extent the City is trying to argue that it can maintain a contract-based malpractice action against Dickens, it is correct. The term "malpractice" has been used in Florida law to describe both tortious and contractual causes of action. *See, e.g.*, Fla. Stat. 95.11(4)(a) ("An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."). When the parties are in privity, the later is permissible, but the former is not. Thus, the economic loss rule permits a contract-based malpractice action, provided that the remedy sought is consistent with the bargained-for risk allocation between the parties. *E.g.*, *Indemnity Ins. Co. of N. Am.*, 891 So.2d at 536-37 ("[W]hen the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.").

However, in this case, the Third-Party Complaint is ambiguous concerning the nature of the malpractice action, specifically whether the action sounds in tort or contract. (Doc. No. 59 ¶¶ 33-35.) Accordingly, the Court will dismiss Count III without prejudice and give the City leave to replead the Count as a contract-based malpractice action.

## Conclusion

Based on the foregoing:

1. The Motion to Dismiss Third Party Complaint by Dickens and Associates (Doc. No. 62, filed July 20, 2009) is **GRANTED in part and denied in part.** Count III of the Third-Party Complaint of the City of Daytona Beach Against Dickens and Associates, Inc. (Doc. No. 59, filed June 24, 2009) is **DISMISSED without prejudice**. The Motion is denied in all other respects. The City shall submit an Amended Third-Party Complaint within eleven days that reasserts Count III in a manner consistent with this Order. If the City chooses not to submit an Amended Third-Party Complaint, this action will proceed on the Third-Party Complaint currently before the Court except as stated in this Order.

2. The Motion for Leave to File Fourth Party Complaint Against Stephen P. Byrne, PE by City of Daytona Beach (Doc. No. 65, file July 30, 2009) is **GRANTED**.

3. Within forty-five days of the service of the City of Daytona Beach's Third-Party Complaint against Stephen P. Byrne, PE, all parties to this action shall confer and submit an Amended Case Management Report. This Report shall make reasonable adjustments to the deadlines in the Case Management and Scheduling Order, (Doc. No. 21, filed Oct. 24, 2008), to accommodate the newly joined parties to this action.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 25 , 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record